21-2125, Hodge v. Bartram. Ms. Rahn, are you ready to speak? Yes, sir. May it please the court? Yes. Good morning. This case involves a traffic stop conducted by Deputy Jeffrey Bartram of the Bernalia County Sheriff's Department. On October 20th, 2018, Deputy Bartram was conducting routine control while wearing his full uniform and driving in a marked patrol car. He observed Ms. Hodge, failed to stop at a stop sign, and failed to maintain her lane and initiated a traffic stop. During that traffic stop, immediately after Ms. Hodge stopped her vehicle, Deputy Bartram approached the window and asked her for identification. Immediately upon contact, Ms. Hodge became verbally resistant to Deputy Bartram's instructions. She refused to provide him his driver's license, her driver's license, refused to identify herself, and told Deputy Bartram that he was lying. Ms. Hodge also called 911 and talked to the 911 dispatcher instead of referring to Deputy Bartram's commands. During that initial encounter, Deputy Bartram asked Ms. Hodge for her driver's license eight times. Ms. Hodge explicitly stated she would not provide him her driver's license. Ultimately, Deputy Bartram observed that Ms. Hodge had bloodshot, watery eyes, she smelled of alcohol, and her speech was slurred. At that point, he— Do we have to accept the allegation that they were bloodshot? Doesn't the video show that they weren't bloodshot? Your Honor, I'm not sure that the video is clear enough to demonstrate the state of Ms. Hodge's eyes. I believe that the District Court found— well, the District Court did find that Ms. Hodge was collaterally stopped from arguing that there was no probable cause to arrest her, and so the probable cause for the arrest is not a dispute in this appeal. Deputy Bartram chose to take Ms. Hodge into custody because she was still inside the motor vehicle and he suspected her of driving while intoxicated. Deputy Bartram ordered her out of the vehicle six times. Ms. Hodge not only physically braced herself by holding onto the steering wheel and trying to pull away from Deputy Bartram as he reached inside the vehicle, she also told him he better stop it. Deputy Bartram pulled Ms. Hodge out of the vehicle and she landed on her side, and he ultimately tried to lay her on her stomach to gain control of her hands. He briefly nailed—I believe the video shows that he's kneeling on the ground near her and placed her into handcuffs. As soon as Ms. Hodge was in handcuffs, he pulled Ms. Hodge to her feet and no further force was used. Following that incident, Ms. Hodge brought three claims in the District Court. She brought a First Amendment claim for wrongful arrest and retaliation as well as a Fourth Amendment wrongful arrest claim. The only issue here on appeal is the Fourth Amendment excessive force plate. The District Court granted summary judgment to the defendants on the first two claims and the plaintiff did not submit any sort of cross-appeal here. So today what we are concerned with is the analysis of the excessive force claims in this case. Under the—Deputy Bartram had argued that he was entitled to qualified immunity. Under the qualified immunity analysis, the plaintiff must prove both prongs of the qualified immunity analysis, one of which is the constitutional violation and the second is clearly established. However, the court can address those in any order it chooses. So I will begin with the arguments regarding clearly established. Well, turning—looking at clearly established, the District Court didn't rely on specific Tenth Circuit or Supreme Court authority and instead said that this was a case that was so obvious that fell within the Supreme Court's—is it Rojas—or Taylor v. Rojas type decision. Would you agree that's what the District Court did? Yes, Your Honor. Okay, and how do we decide when a case is so extraordinary and so obvious that just by the facts itself we can tell that it should have put every reasonable officer on notice? Well, Your Honor, the Supreme Court has made that clear. That's an extremely rare circumstance. As a matter of fact, this court in a very recent opinion, Surrat v. Clamser 21-1289 in an opinion published on November 9th, 2022, again referenced the idea that that's a very rare case. So this is distinguishable from the factual circumstances where the Supreme Court or the Tenth Circuit has found an obvious instance because this is not such an extreme case and the court's analysis did not find that it was an extreme case. Rather, the court relied upon Graham and stated because the Graham factors in its opinion did not resolve in favor of Deputy Bartram, it was therefore a clearly established case. But nothing about this being such an extremely egregious violation that Deputy Bartram would have been on notice. And we do have some cases, I mean at this point they're getting a little old, that do just that. Apply the Graham factors in the first instance on appeal, say that they weigh one way or the other, and then reach a decision based on that. Do you think that's still good law? That law continues to be applicable, but it's distinguishable in this case. The most landmark case from the Supreme Court is Holt v. Peltzer, which found that handcuffing a shirtless prisoner to a hitching post for seven hours was an obvious constitutional violation. I think you're answering a different question than I'm trying to ask. It seems to me that we have sort of two ways of getting to clearly established. One is that we've got the case law that tells us that it's clearly established. And the other is that there's no case law, but it's so obvious that every reasonable officer should know. And my question is more in the first realm, which is in determining that we have precedent that alerts you that it's established, that you should know you're violating a constitutional right. Is it still good law for the appellate court to walk through the Graham factors in the first or the district court to walk through the Graham factors in the first instance and say, oh yeah, based on these factors, it's clearly established? No, I believe that the appropriateness is to find a case that's factually similar. The Graham factors may guide that analysis, but that would not, the idea that simply because a case, the application of the Graham factors indicates there's excessive force. There's a separate inquiry under clearly established, which is either that is egregious or is a factually analogous case. The United States Supreme Court recently reiterated the idea that it is a fact-specific inquiry, not simply the application of the Graham factors that controls the clearly established analysis. And those are cited in the briefing, Your Honor. Thank you. So turning to the clearly established analysis, the district court relied on the idea of an obvious violation. This case is distinguishable from very egregious violations. Again, I point the court to its recent opinion in Surratt's, issued on November 9th, 2022, where the court found that as of 2017, there was no case law that would have made it clear to every officer that throwing an individual to the ground in response to minimal resistance would violate the Fourth Amendment. What about Davis v. Clifford? Davis v. Clifton is distinguishable from the facts of this case, given the amount of force used. In that case, multiple officers dragged the plaintiff out of the car, broke out her windows, and dragged her over glass. I guess I'm not understanding why that distinction matters, isn't the question here whether this, the amount of force in this case was necessary? And the circumstances are similar in that you've got a person sitting in their car, minding their own business, that suddenly is confronted by police and told, in that case, she was told she was under arrest and still didn't get out of the car. Here, our plaintiff wasn't even told she was under arrest. He was, she was informed that he was giving her a lawful order to step out of the vehicle. And the idea of being informed explicitly of being under arrest is not a specific requirement under the Fourth Amendment. I'd also note that the court distinguished Davis on the same idea that the amount of force used against the plaintiff, in terms of Davis dragging her across broken glass, was different than a takedown. And that was, again, in the Surratt case. So the difference, Your Honor, is that— What was the, exactly what happened on the takedown in this case? Wasn't there some sort of a, kind of threw her down and used some kind of a pain hole? Deputy Bartram ultimately did apply a plain compliance technique to getting control of her hands during the handcuffing. However, the undisputed material facts as found by the court is that she was resisting the handcuffing. There were no blows. There was no taser. It was just a plain compliance to place her hands in handcuffs. Did he ask her to get out of the vehicle? Did he ever say, if you don't get out of the vehicle, or I need you to get out of the vehicle, and if you don't, I'm going to force you out? Is there any warning that he was going to do this? Deputy Bartram did not explicitly tell her that force be used against her, but he asked her six times to get out of the vehicle. And when she said, I don't have to, or that it's not a lawful order, he specifically instructed her that that was a lawful order and she needed to step out of the vehicle multiple times. He also, while she was on the ground and he was attempting to gain control of her hands, he instructed her to give her his hands multiple times. So turning from, and I would like to reserve some time for rebuttal, so turning briefly to the constitutionality of this situation, as cited in the briefing, there have been multiple Tenth Circuit cases finding that the use of even more egregious force such as pepper spray or other more forceful takedowns were justified in the context of a traffic stop, even for minor traffic violations. It's specifically cited in the briefing, but that's Meacham v. Frazier, which is 500 F. 3rd, 1200 Simpson v. Kansas, which is 593 F. Appendix 9, sorry, 790, and Valencia de Luca, which is 612 F. Appendix 512. And again, that's cited in the briefing. So I'll reserve the remainder of my time for rebuttal, unless I'll stand for any questions. Thank you. Mr. Smith. Good morning, and may it please the court. I just want to briefly go over some of the facts that were omitted from Officer Bartram's brief, and also his argument this morning. And they are specific, and they do fall in line with Davis. And to begin, Davis is from the perspective of a woman who is in a vehicle and under a reasonable fear for her safety, which is the same here. On the night that Ms. Hodge was pulled over by Officer Bartram, she had a good reason to believe that she had not violated any traffic infractions. In fact, she was acquitted of those charges at the criminal trial. Was it reasonable for her to think that this was not a law enforcement officer? Based off of the undisputed material facts from the district court, yes. At the time that she was driving on Eubank, she did not. It's hotly disputed, so I won't go too much into it. But there were no traffic infractions that resulted in that. That's not the issue. Was there reason for her to believe that the person who stopped her was not a law enforcement officer? Yes, Judge Harts. So you're saying because she didn't do anything wrong, she thought this person in a marked vehicle wearing insignia of a law enforcement officer was not a real officer? Is that what you're saying? I'd be happy to address your question, Your Honor. At the time that she was pulled over, Officer Bartram's vehicle did have decals on it, but they're ghost decals, and so it's a black vehicle. It doesn't say sheriff's deputy unless it's in the light, and that's in footnote 2 of the district court's opinion. And you cannot see those decals unless shining a light directly on them. Also, when she was pulled over, based off of her testimony at deposition, she didn't think it was a normal cop car because the lights were on top of the vehicle at the time that Officer Bartram approached her. She did know that there were emergency lights on the vehicle. She just didn't think it was a normal cop car. That's correct. But he was wearing a uniform, right? I'm sorry. Officer Bartram was wearing a uniform. And on her, when she's talking to 911, she says he's a police officer and he's being aggressive and rude to her. I think part of, it wasn't simply the fact that Ms. Hodge was worried whether or not he was a law enforcement officer. Okay, so, I mean, she had every reason to know he was a law enforcement officer. He identified himself as such? Yes, she was questioning the shot. Okay, and I've watched all the videos multiple times, and I don't think it's anything like Davis versus Clifford. Nobody broke her window. Nobody pulled her over, multiple officers pulling her over broken glass and slamming her face into the asphalt on the broken glass. I mean, I think we have a very different case here. And it is similar to Davis in the fact that the escalation and the lack of mitigation. If looking at Davis. Seems like it's more like Meacham. I'm sorry, Meacham? Yeah, where the person was on, wouldn't get off the cell phone. And distinguishing from Meacham, I believe that the opinion in that case, the court addressed that it was a 50-minute ordeal, backup arrived. You know, it wasn't just one officer and one person in the vehicle. Backup had arrived, a tow truck had arrived within 15 minutes, and the plaintiff was still not complying with lawful orders, including warnings of arrest and also being forcibly removed from the vehicle. What should the officer have done here? What are you supposed to do when somebody doesn't comply with half a dozen orders to get out of the vehicle? Is the officer just supposed to say, okay, you win? What was the reasonable thing for the officer to do here? I think in looking at our case law, stemming from Casey all the way to Davis, there is some mitigation that should be used in these instances. Like what? At the time that Officer Bartram rounded the vehicle, he was calling for backup. At that time, the stop had only been about less than two minutes. And so she was on the call with 911, fearing for her safety, which is an undisputed material fact from the district court. And so maybe speaking to the operators. How do we know she's fearing for her safety or fearing she's going to get a DUI? I mean, you know, she is talking to 911, and she's saying he's being rude to me, and he's doing this, and he's giving me unlawful orders, which, you know, I don't have any problem understanding why the officer thought that she might be drunk. I mean, it's very unusual behavior. And I think if you look at the video, and going back to what happened. I have looked and looked at the videos. And in terms of removing someone from a car, it looked to me like he was as gentle as he could possibly be. This was not multiple officers dragging someone through the window. Based off of the video evidence in the record, Officer Bartram did yank Ms. Hodge from the vehicle. Because she had anchored herself in the vehicle, trying to prevent him from removing her. And I think that is the contention in this case, is whether or not she actively resisted the arrest. I don't think there's any doubt she actively resisted arrest, in addition, on the ground. If you'd answer my question, what should the officer have done? If somebody, he's asking her to get out of the car, does it repeatedly, and she declines to comply. What is an officer supposed to do in that circumstance? That's a constitutional requirement. I haven't heard that. I didn't get that from your brief. Sometimes you look at the factors, the gram factors, whatever. And it doesn't really focus on what's going on in this case. Those are very important guidelines, but they don't fit every situation. So tell me what the officer, what you would have liked to have the officer do in this case. I believe in looking at our case law and distinguishing, and how the courts have looked at these similar situations, the officer could have said, you will be placed under arrest if you do not exit your vehicle. I will forcibly remove you. And that's present in Meacham, as well as Simpson v. Kansas. I don't think it was very clear that she was being ordered to leave the vehicle. So the constitutional violation was saying, please get out of the vehicle, I want you to get out of the vehicle six times. That's not acceptable constitutionally, because he should have said, if you don't get out, I'm going to pull you out. Was that the constitutional violation here, is that he didn't say, if you don't get out, I'm going to forcibly remove you? No, I think the constitutional violation extends past that, after he yanked Ms. Hodge out of the vehicle. So what was necessary before the officer could forcibly remove her from the vehicle? What more needed to be done before an officer could forcibly remove her from the vehicle? The one thing you've mentioned is he should have said, if you don't get out, I'm going to forcibly remove you. Is that what the constitutional violation was in removing her from the vehicle? No, I believe that would fall under the mitigation that the Tenth Circuit has looked at in the past. I want you to tell me what should have been done. I'm not interested in the case at all. I'm asking what the officer should have done, because that's not at all clear to me here. I believe the officer should have informed her prior to being arrested that I'll remove you from the vehicle. So that was the constitutional violation, is that he didn't say, if you don't comply with my order, I will forcibly remove you. That was what was unconstitutional. Part of it, yes. And the disproportionate force used to remove her from the vehicle. What was the disproportionate force? What could he have done to remove her that would have required less force? Judge McHugh thought it looked minimal. In the process of what was going on in the moment, Ms. Hodge was just trying to be on the line with the 911 operator to make sure that he was in fact an officer. No, she was trying to – she was disobeying his order. What less force could he have used to get her out of the vehicle? I think as soon as he pulled her – in pulling her from the vehicle, I'll concede that I don't know what less force he could have used in removing her from the vehicle. I think really where the constitutional violation arises from – and I'm happy to answer your question, Judge Moritz. Answer my question. I'll tell you when to turn to another. Judge Moritz will have a chance in a second. Don't end – don't quit answering my question to turn to another judge. That's not appropriate. Go ahead and answer my question. I believe after pulling Ms. Hodge from the vehicle and Officer Bartram laying her down on the ground and then placing her underneath his knee on her back and her neck and also placing her in the compliance hold after she's already been subdued, based off of the undisputed material facts from the district court, the court found that she wasn't actively resisting, unlike Officer Bartram has said in this court. The court found that she was actively resisting throughout the encounter with Deputy Bartram. And I think that's part of the material facts that were addressed by the district court, that she was in response to pain and the reflective action from that pain. Well, I guess it seems like to me a lot of your argument seems to rely on what she was doing and what her fear she suggests was that she was afraid that he wasn't really an officer and she was calling 911, but is any of that even relevant in light of – I mean, this is – our question is what would a reasonable officer have perceived? And wouldn't a reasonable officer have perceived that she was simply avoiding responding to his instructions? Why would a reasonable officer have perceived that she should be in fear of her safety under these circumstances? I believe that a reasonable officer would perceive her phone call to 911 in trying to make sure that this is a lawful stop. As unreasonable. I'm sorry? As unreasonable under these circumstances. I don't understand why a reasonable officer would perceive that as a genuine concern for her safety that he needs to address. I just – Or that is a justification for ignoring his orders. I think in – when our defense circuit has looked at this in Meacham as well as Fraser – I'm sorry, Meacham and Simpson, there is this look of what is actually going on and involved between the officer and the plaintiff themselves. And Davis is a good example of that too, where Davis is telling the officer, you know, I am afraid for my safety. I will leave the vehicle if you can promise that I will be safe. Although it's not explicit here with Ms. Hodge, that is what she was trying to convey to the 911 operator. And a reasonable officer, understanding that she was in fear for her safety, may take a step back and say, let's talk to the operator. I'm just saying, I'm not sure it's at all – a reasonable officer would have thought at all that she was in fear for her safety. Ed, I guess I cannot answer that question other than how I already have, and I'm sorry. All right. Thank you. Going back, I believe there's a few questions from Judge McHugh regarding whether or not the grant factors can still be relied on. And I believe they can, based off of White v. Pauley, which is also addressed in the district court opinion. It leaves it open, as long as it's an obvious case. And I think that the constitutional violations in this case are not only just the seizure from the vehicle, but also the pain compliance hold after Ms. Hodge has already been placed on the ground. As you can hear in the belt tapes, as Judge McHugh has already made clear that you've listened and watched, Ms. Hodge is telling Officer Bartram, I have a preexisting injury to my shoulder. It's hurting, and she's screaming quite loud about that. And to further take Ms. Hodge and place her into a compliance hold to arrest her, I believe that is also disproportionate for what was going on for such a small woman and a large man at that time. Before I finish my argument, going over the cases cited by Officer Bartram, all of them are active, resistant cases, if you're looking at Valencia. So if we thought that this, too, was an active resistance case, would you concede that those cases govern? No, I still think we go back to Graham v. Conner. In each of those cases, there was unreasonable disproportionate force found. And so Graham was not even successfully found in any of the cases cited by Officer Bartram. That includes the Valencia matter, Simpson, and Beecham. The district court noted in its opinion also that this is an obvious case, and I believe it is in terms of the disproportionate force used after Ms. Hodge was extracted from the vehicle. The amount of force after Ms. Hodge was removed and Ms. Hodge is trying to inform the officer of what was going on with her shoulder, I think that a reasonable officer in the same circumstances would have noticed and tried to relieve that and also affect the rest at the same time. I think the Graham v. Conner factor is also way in favor of Ms. Hodge. Looking at the first factor, what the arrest was for, and it's a misdemeanor. This was a DUI stop. The second factor, Ms. Hodge at all times did not threaten the officer in any way or make any sudden movements or anything like that or endanger anyone else. This is in an empty parking lot where there were cars not driving by. And the third point, Ms. Hodge did not try to actively flee or resist arrest. Thank you, counsel. Thank you. Yes, Your Honor. I just want to turn to some of the facts raised by Ms. Hodge's counsel. The court at this point is bound by the determinations of fact by the district court. Several of the facts raised by counsel are not consistent with the district court's findings. For example, there was no finding by the district court that Ms. Hodge warned Deputy Bartram that she had a preexisting injury, nor did the district court find the fact that she was screaming dispositive. The district court also found that the pressure that was placed was only while Deputy Bartram was placing her in handcuffs and that it did not extend beyond the application of the handcuffs. Additionally, as the court noted in its questioning, there was no dispute that Deputy Bartram was a uniformed officer. And so, Ms. Hodge's, as the court correctly noted, Ms. Hodge's subjective belief or her concerns are not what the officer is bound by. In assessing an excessive force place, the court must look at it from the perspective of a reasonable officer on scene. From Deputy Bartram's perspective, he noticed traffic violations. The court found that the stop itself was good and was supported by probable cause and that Ms. Hodge's collaterally stopped from arguing otherwise. So, again, the idea that a citizen may reasonably refuse to comply with an officer simply because they do not agree about the traffic stop when there is no doubt about the identity of the officer, there is no case law. And I just want to lastly address the concept of how the case law analysis is applied. It is the plaintiff's burden to show both aspects of qualified immunity. In both the briefing below, as well as in the district court opinion, and in the briefing before this court, the plaintiff has only distinguished the cases cited by the defendants. For example, by stating that the court found that there's a difference between what the court found was constitutional in Meacham versus what the facts were today, that's simply distinguishing a case that was held to be constitutional, but as Judge Hartz pointed out, there was no finding by Meacham that there is a constitutional requirement to explicitly warn someone that they will be arrested or forcibly removed from the vehicle. And the length of the encounter in Meacham was just one factor that this court relied upon to find that it was reasonable. It was not dispositive. So the idea that this situation is different from other situations where the court has found the force to be constitutional does not carry the plaintiff's burden under the constitutional prong or the clearly established prong. And with that, I do stand for any questions that the court has. Thank you, Counsel. Thank you.